Commonwealth *v.* Peoples et al., Appellants.

Argued September 28, 1942.  Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. H. Ward Hinkson,* with him *Wm. Chas. Hogg, Jr., Harrold R. Gill* and *J. Paul MacElree,* for appellants.

*Guy G. deFuria,* First Assistant District Attorney, with him *William B. McClenachan, Jr.,* District Attorney, and *William R. Toal,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, November 23, 1942:

The question involved is a simple one—Does the indictment in this case charge a criminal offense where it merely avers that the defendants as city councilmen, unlawfully voted upon a pending measure in which they had a personal or private interest, contrary to the provisions of the Act of June 23, 1931, P. L. 932, Article X, section 1009?—but the answer is technical and somewhat difficult. The learned trial court held that the indictment did not charge an offense punishable at common law, and the learned Superior Court held that it did. These appeals are by all five defendants, from the judgment of the Superior Court, which reversed an order of the Court of Quarter Sessions of Delaware County, sustaining defendants' motions in arrest of judgment.

Defendants were indicted on June 3, 1941, for malfeasance, misfeasance, non-feasance and misdemeanor in office, in that they had voted and passed a resolution before council fixing the salaries of the members of the Chester Municipal Authority, to which they had previously elected themselves members, contrary to the provisions of The Third Class City Law of June 23, 1931,

P. L. 932, Article X, section 1009.[1] Defendants' demurrer to the indictment having been overruled and their motion to quash having been denied by the court, on the ground that the indictment properly set forth a common law offense, they were tried and found guilty as indicted, after a charge by the learned trial judge, in which he said that defendants had "no right . . . to fix for themselves, and receive, an additional salary for another office." This was equivalent to binding instructions for conviction. Later, the trial judge changed his mind, and properly so, and sustained defendants' motions for arrest of judgment, upon the ground that "The penalty here being removal from office, it is not, in view of the remedy of quo warranto, as provided by the Act of 1836 [Act of June 14, 1836, P. L. 621] necessary to call into operation the common law to carry into effect Section 1009 of the Third Class Cities Code of 1931, P. L. 932, and, as a consequence, a conviction under this indictment cannot be sustained." The Commonwealth then appealed to the Superior Court, and the majority of that tribunal reversed the order sustaining defendants' motions in arrest of judgment and arresting judgment as to each defendant, and remitted the record with a procedendo, for the reason that "the duty here violated by defendants was not enjoined by the penal provisions of any act of assembly, or a breach of it so penalized; both the offenses and the penalty to be imposed come under the common law." Defendants' petition for allowance of appeal to this Court from the judgment of the Superior Court having been granted, these appeals followed.

---

[1] "Disclosures of Interest by Councilman.—A member who has a personal or private interest in any measure or bill proposed or pending before the council shall disclose the fact to council, and shall not vote thereon, nor take any part in the discussion of the same. If such interested person shall vote without disclosing his interest in such measure or bill, and the same be carried by his vote, he shall forfeit his office, and the measure or bill shall be void."

The essential facts are not controverted. Defendants as councilmen of a third class city did vote salaries to themselves as members of the Authority. They disclosed their interest. Their action was entirely free of fraud or bad faith, and was considered legal at the time. The City Solicitor drew the salary resolution. It was not until our decision months later (November 24, 1941) in *Com. ex rel. McCreary v. Major,* 343 Pa. 355, that it was settled that the council of a third class city could not legally appoint its members to places on the board of a municipal authority created by that city.

The law is clear that misfeasance in office means either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive: *McNair's Petition,* 324 Pa. 48; *Commonwealth v. Hubbs (No. 2),* 137 Pa. Superior Ct. 244. Such offense is not indictable under the common law, however, "where a remedy is provided or duty enjoined, or anything directed to be done by the penal provisions of any act of assembly", unless necessary "for carrying such act into effect": Penal Code, Act of June 24, 1939, P. L. 872, section 1104. This section of the Code is but a re-enactment of section 183 of the Act of March 31, 1860, P. L. 382, which was in force when The Third Class City Law was enacted, with the addition of the terms "penal provisions". That section in turn was taken from section 13 of the Act of March 21, 1806, 4 Sm. L. 326. Since it was for the abuse of a positive statutory duty that defendants in the instant case were indicted, as the indictment itself clearly indicated (i. e. by voting upon and carrying by their vote a measure in which they had clearly disclosed a personal interest, in violation of section 1009 of The Third Class City Law), the question for determination is whether or not the penal provisions of that section, providing for forfeiture of office, relate to those councilmen who vote after disclosing their interest, as well as to those who vote without revealing the same.

In construing a statute, it should receive the most reasonable and beneficial interpretation: *Orlosky v. Haskell*, 304 Pa. 57. The court should give all laws a sensible construction (*United States v. Kirby*, 74 U. S. 482), and should be guided by the presumption that the legislature does not intend a result that is unreasonable or absurd (*Lancaster Co. v. Frey*, 128 Pa. 593). "... a 'primary rule of construction ... is that, in applying a statute, the first duty of the court is to ascertain and give effect to the intention of the legislature' (Vonot v. Hudson Coal Co., 285 Pa. 385, 392-3), and when 'necessary ... to effectuate a plain legislative intent, ... additional ... words [may be] interpolated': Catlin v. Pickett & Co., 262 Pa. 351, 354": *Commonwealth v. Lowe Coal Co.*, 296 Pa. 359, 367. In construing the particular provision of The Third Class City Law with which we are here concerned, these well-established rules of statutory construction should be kept in mind.

A careful study of the provisions of section 1009 has convinced us that it was the legislative intent positively to provide that any member of council who has a personal or private interest in any measure or bill proposed or pending before council "shall not vote thereon", whether he does disclose or does not disclose his interest; and if he votes, and the measure or bill be carried by his vote, "he shall forfeit his office, and the measure or bill shall be void." Any other interpretation would be most unreasonable, for obviously it is just as much against a sound public policy to vote after revealing a personal interest as it is to vote without doing so. The result is the same so far as the public is concerned. To suppose that the legislature intended by this section merely to penalize by ouster those members of council who vote upon a matter without disclosing their interest therein, and at the same time deliberately leave those councilmen who vote after revealing their interest to conviction criminally under the common law and possible punishment for a maximum term of seven years

at hard labor under the Act of April 5, 1790, 2 Sm. L. 531, as amended by the Act of April 4, 1807, 4 Sm. L. 393, would be manifestly absurd. See Sadler on Criminal Procedure in Pennsylvania, (2d ed., 1937), Vol. 2, §627.

For these reasons, we are unanimously of the opinion that the breach by defendants of their duty not to vote after revealing their interest in the resolution fixing their salaries is punishable by ouster from office, under the provisions of section 1009 of The Third Class City Law. Since a particular mode of proceeding to accomplish removal from office, i. e., by quo warranto, is provided by the Act of 1836, the common law is abrogated by section 1104 of the Penal Code of 1939. Therefore, the indictment cannot be sustained and the learned court below properly arrested judgment.

The judgment of the Superior Court is reversed and the order of the court below sustaining defendants' motions in arrest of judgment and arresting judgment as to each defendant is reinstated.